32712. INDEPENDENT LIFE AND ACCIDENT INSURANCE CO. *v.* PANTONE.

Decided October 18, 1949. Rehearing denied November 9, 1949.

428

*Leonard Farkas & Walter H. Burt,* for plaintiff in error.
*James W. Smith,* contra.

Townsend, J. (After stating the foregoing facts.) The original petition, which set forth the contract of insurance, the death, the demand and the failure to pay, was subject to the demurrers filed against it that there was no allegation that the policy was in full force and effect at the time of the insured's death, and also that the terms of the policy were not sufficiently set forth. In her first amendment the plaintiff further alleged: that about two weeks before December 20, 1948, she called at the office and asked to have an agent sent out to collect her premiums, that on December 20 she again went to the office and this time left the sum of $4, "not knowing whether she was one week or six weeks behind but believing she was leaving enough so that it would be sufficient to pay it up"; that an agent then called at her home and placed the credits in her receipt book, and that the next day he came back and asked her to pay up to January 3, 1949, and that she did so. In her second amendment the plaintiff stated that Guy Tedders died at 5 a. m., on December 20, 1948. By Exhibit "C" attached to and made a part of the amendment she set out further provisions of the policy of insurance, as quoted in the statement of facts, and by Exhibit "B" she set out a copy of the premium receipt book, with the credit entries, showing that the weekly premuim payments were in the amount of $.80, and that on December 20, 1948, the agent D. W. Nash had credited her for 16 such payments, for the weeks of September 20, 1948, through January 3, 1949, and that he had written the word "Revival" after the first of these credit entries. This amendment contains the further allegation that "all payments of premiums were made when the same became due and payable but the defendant's agent, D. W. Nash, waited

until December 20, 1948, before inserting on the premium receipt book the dates that premiums were paid . . said payments were made when same became due and payable and at the time of the death of the insured, all of the premiums had been paid and the said policy had not elapsed." The plaintiff did not strike any of the allegations of her original petition or amendment.

There results, therefore, a conflict in the pleadings which must be resolved against the pleader, since it affirmatively appears that the insured died at 5 a. m., and that at noon of that day the premiums were in arrears, at the very least, in the amount of $4, or five weekly payments of $.80 each, plus some undetermined additional sum which was paid the next day. In view of these facts, the allegations that the payments were made when due, and that the policy had not lapsed at the time of the insured's death, must be treated as conclusions not supported by the facts stated. The general assertion must yield, on demurrer, to the more particular statement of the transaction which shows that the plaintiff was in fact in arrears at the time of death, for a period of time exceeding four weeks. Reference to the pleaded provisions of the policy discloses that the grace period of the policy is four weeks, and that there can be no reinstatement after that time unless the insured is alive and in good health.

In *Coleman* v. *Western & Atlantic Railroad,* 48 *Ga. App.* 343 (1) (172 S. E. 577), it was stated:

"It is an elementary rule of construction of pleadings, that the pleading is to be construed most strongly against the pleader, and that if an inference unfavorable to the right of a party claiming a right under such a pleading may be fairly drawn from the facts stated therein, such inference, on demurrer, will prevail in determining the rights of the parties. *Krueger* v. *MacDougald,* 148 *Ga.* 429 (96 S. E. 867)." See also *Wells* v. *H. W. Lay & Co.,* 78 *Ga. App.* 364 (50 S. E. 2d, 755).

■ Counsel for the plaintiff further contends that, even though the petition be construed as showing that the premium payments thereon were in arrears for more than the four weeks allowed by the grace period, and even if, under the provisions of the insurance contract, the agent had no authority to reinstate

the policy which, under its terms, could only be reinstated upon written application to the defendant insurance company, nevertheless, the act of the agent in accepting the premiums and writing the word "Revival" upon the premium receipt book, coupled with the fact, as alleged, that after the agent accepted the premiums the defendant company accepted the same and retained them until after demand had been made for the value of the policy, at which time it tendered them back, constitutes a ratification by the defendant of the acts of its agent and a waiver of the provisions of the policy that the contract should lapse upon non-payment of premiums for a period of four weeks.

The policy provides that, upon a lapse at the end of the grace period, it may be reinstated upon payment of the arrearage and written application of the insured, together with the presentation of evidence of insurability satisfactory to the company. *Kelley* v. *Carolina Life Ins. Co.*, 48 *Ga. App.* 106 (171 S. E. 847), relied on by the plaintiff, is based upon the principle of law of departure from the terms of the contract by the insurance company in having previously accepted late premium payments without lapsing the policy. In *Causey* v. *Gulf Life Ins. Co.*, 62 *Ga. App.* 378 (8 S. E. 2d, 535), and in *Supreme Lodge Knights of Pythias* v. *Few*, 138 *Ga.* 778 (76 S. E. 91), it appeared that the agent had actual knowledge of the illness of the insured, and knowledge by the agent of such illness was there presumed to be the knowledge of the principal. In *Massachusetts Benefit Life Assn.* v. *Robinson*, 104 *Ga.* 256 (30 S. E. 918), the premium payment was receipted to the insured by the insurance company; in *Georgia Masonic Mutual Life Ins. Co.* v. *Gibson*, 52 *Ga.* 640, the payment was received directly by the secretary of the association and retained by him within the scope of his authority; in *Neal* v. *Gray*, 124 *Ga.* 510 (52 S. E. 622), the company surrendered a promissory note in favor of a renewal note; in *German American Life Assn.* v. *Farley*, 102 *Ga.* 720 (29 S. E. 615), the facts stated in the application for insurance were sufficient to allow the company, on inquiry, to ascertain the true status of the health of the insured, etc. Slight evidence of a waiver of the terms of the policy is sometimes sufficient, in order to avoid the necessity of a forfeiture, but there must be some showing either that the forfeiture was waived by an officer of the

corporation having authority to do so, or that the company had knowledge of the facts, or that it had at least the means of knowledge accessible sufficient to satisfy itself, upon inquiry, as to the true state of facts. When such a showing is not made, the plain and unambiguous words of a forfeiture clause of a policy must be given their reasonable intendment and, the forfeiture having already taken place, the agent would be without authority to bind his principal by any waiver thereof. See *Carroll v. Garlington Hardwick Co.*, 79 *Ga. App.* 708 (54 S. E. 2d, 441); *Life & Casualty Ins. Co. v. McLeod*, 70 *Ga. App.* 181 (27 S. E. 2d, 871); *Sovereign Camp W. O. W. v. Muller*, 63 *Ga. App.* 327 (11 S. E. 2d, 92); *Thurmond v. Sovereign Camp W. O. W.*, 171 *Ga.* 453 (155 S. E. 760); *Hutson v. Prudential Life Ins. Co.*, 122 *Ga.* 847 (50 S. E. 1000); *Reese v. Fidelity Mutual Life Assn.*, 111 *Ga.* 482 (36 S. E. 637); *Graham v. Niagara Fire Ins. Co.*, 106 *Ga.* 840 (32 S. E. 579); *Sovereign Camp W. O. W. v. Griffin*, 30 *Ga. App.* 217 (117 S. E. 261); *Finleyson v. Liverpool Ins. Co.*, 16 *Ga. App.* 51 (84 S. E. 311); *Plumer v. Continental Casualty Co.*, 12 *Ga. App.* 594 (77 S. E. 917). It would therefore appear that there must be some showing that the company had knowledge of the facts, or of some affirmative act upon its part, before a waiver could be assumed from the act of an agent which was beyond the scope of his authority and in violation of the written provisions of the contract, other than the mere acceptance of the premium by the agent, which under the terms of the policy he was not authorized to accept unconditionally, and the mere allegation (or proof) that this money was forwarded to the company, where the total period of time elapsing between the payment to the agent and the demand upon the company was between two and three weeks, and where the company had no knowledge of the previous death of the insured.

■ The instant case, moreover, must be decided in accordance with the wording of the contract of insurance in regard to the provisions of reinstatement after lapse: "but the reinstatement shall not become effective and the company assumes no liability for premiums paid by any one on lapsed policies except that at the time of such payment the insured is alive and in sound health. In all such cases to the contrary, the company agrees to return to the insured or beneficiary such premiums

paid out of the grace period." The petition in this case affirmatively shows that the insured was dead at the time the payments were made, and it certainly does not show that the insurer had knowledge of this fact, nor did the agent, who attempted without authority to reinstate the policy, have such knowledge. The plaintiff entered into a valid contract and by its terms agreed that, if the policy should lapse, there would be no liability on the part of the company for any payments made thereafter unless the insured were alive and in sound health. This he was not, and it only remains to put into effect the plain and unequivocal language of the contract itself, construed in accordance with the law of contracts generally.

This case is distinguished from *Wright* v. *Supreme Commandery of the Golden Rule,* 87 *Ga.* 426 (13 S. E. 564), in that there, although the policy was in arrears when the insured died, he was still a member in good standing and the arrearage was paid by his beneficiary within the 31-day grace period allowed. Here the policy had already lapsed.

See also 3 Couch on Insurance, § 635, where it is stated: "If the policy be conditioned for revival of the risk after forfeiture by non-payment of the premium, the company will not be liable, nor the risk revived, where the payment is not made until after loss or death which occurred during default."

The trial court erred in overruling the general demurrer to the petition as amended.

*Judgment reversed. MacIntyre, P. J., and Gardner, J., concur.*